UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

TIFFANY BRYAN,

    *Plaintiff*,

    *v*.

AEG MANAGEMENT BROOKLYN, LLC AKA
ANSCHUTZ ENTERTAINMENT GROUP
MANAGEMENT BROOKLYN AKA
AEG BROOKLYN MANAGEMENT, LLC,

    *Defendants*.

------------------------------------------------------------------------x

**14 Civ. 3727**

**COMPLAINT**

## NATURE OF THE ACTION

1. Plaintiff Tiffany Bryan, by counsel, The Harman Firm, PC, alleges as follows.

2. Plaintiff Bryan alleges that Defendant AEG Management Brooklyn, LLC discriminated against her based on her race, in violation of the Civil Rights Act of 1991, 42 U.S.C. § 1981.

3. Plaintiff Bryan alleges that Defendant AEG Management Brooklyn, LLC discriminated against her based on her race, in violation of the New York City Human Rights Law, N.Y.C. ADMIN. CODE § 8-107

4. Plaintiff Bryan alleges that Defendant's discrimination resulted in her effective termination. Ms. Bryan seeks damages for retaliation, emotional distress and punitive damages under the aforementioned statutes.

## PARTIES

5. In this employment discrimination matter, Plaintiff Tiffany Bryan is a black woman was ridiculed, discriminated against, and effectively terminated for the way she wears her hair. Ms. Bryan maintains her hair as countless other people do, but because of the natural characteristics of her hair and Defendant's prejudice, Ms. Bryan suffered discriminatory actions at the hands of Defendant.

6. Defendant AEG Management Brooklyn, LLC, which upon information and belief is also known as (i) Anschutz Entertainment Group Management Brooklyn and (ii) AEG Brooklyn Management, LLC, is hereinafter referred to as Defendant AEG.

7. Defendant AEG was at all times relevant hereto a citizen of the state of Delaware, operating in the Eastern District of New York with New York State Department of State identification number 4161321 as registered with Division of Corporations.

8. At all times during Plaintiff's employment with Defendant, Denice Brown was Defendant's Security Coordinator.

9. At all times during Plaintiff's employment with Defendant, LaNiece Tyree was Defendant's Security Manager.

10. At all times during Plaintiff's employment with Defendant, Katherine Lewin was Defendant's Human Resources Generalist.

11. At all times during Plaintiff's employment with Defendant, Jason Sandoval, was Defendant's Senior Director of Guest and Security Services.

## VENUE

12. Venue is proper in this Court because it is the judicial district in which a substantial part of the events or omissions giving rise to these claims occurred.

## JURISDICTION

13. This Court has subject matter jurisdiction over this proceeding, as United States District Courts are granted "original jurisdiction of all civil actions arising under the . . . laws . . . of the United States . . . ." 28 U.S.C. § 1331.

14. This Court has supplemental jurisdiction over Plaintiff's state and city claims pursuant to 28 U.S.C. § 1367.

## JURY DEMAND

15. Pursuant to FED. R. CIV. P. 38(b), Plaintiff respectfully requests a jury trial for each claim herein raised.

## STATEMENT OF FACTS

16. In September of 2013, Plaintiff Bryan was hired by Defendant AEG to work as a security guard at the Barclays Center.

17. Plaintiff Bryan is an African-American woman who wears her hair in a "natural" style, meaning that Ms. Bryan does not treat her hair with heat, chemicals, or in any other way.

18. Plaintiff Bryan maintains her hair at a length typical for women, and at which many of her co-workers, male and female, keep their hair.

19. On or about March 3, 2014, Plaintiff was approached by Security Coordinator Denise Brown, who told her that her hair was too wild and that it needed to be tamed. Ms. Brown told Plaintiff Bryan that she "looked like she stuck her finger in a socket and was electrocuted."

20. On or about March 7, 2014, Plaintiff Bryan was then approached by Security Manager LaNiece Tyree. Ms. Tyree asked Ms. Bryan if she had spoken to Ms. Brown. Ms.

Tyree then told Ms. Bryan that she "needed to do something to her hair," and that she needed to "tame it because it looks like she was electrocuted." Ms. Bryan asked Ms. Tyree what she suggested Ms. Bryan do with her hair. Ms. Tyree told Ms. Bryan that she could wear it in a headband. Ms. Bryan informed Ms. Tyree that wearing her hair tight, in a headband or otherwise, caused Ms. Bryan to suffer from serious headaches.

21. During the week of March 10, 2014, Plaintiff Bryan was approached numerous times and asked to put a headband on.

22. Plaintiff Bryan requested, through her shop stewardess, a meeting with Human Resources on the subject of her hair. Ms. Bryan prepared a statement detailing the repeated harassment due to her hair, and sent it to Human Resources.

23. On or about April 10, 2014, Plaintiff Bryan met with Ms. Tyree and Human Resources Generalist Katherine Lewin. In the meeting, the parties discussed what was said about Ms. Bryan's hair, Ms. Bryan's feelings about what was said, and how Ms. Bryan was supposed to wear her hair from then on. Ms. Bryan agreed agreed to wear a headband part of the time, and a ponytail the rest of the time.

24. On April 25, 2014, Plaintiff Bryan was approached by a supervisor and told that she was "lucky she had her hair in a ponytail because all of the supervisors were told if she came in with her hair out they were to send her to the office."

25. On April 27, 2014, Plaintiff Bryan was wearing her hair out with a headband on. Approximately one hour into her shift, while Ms. Bryan was standing at her post, Jason Sandoval, Senior Director of Guest and Security Services walked by, took out his phone, and texted someone; a few minutes later Ms. Bryan was approached by a security manager and ordered to go to the office.

26. Plaintiff Bryan reported to the office; Ms. Tyree and Mr. Sandoval were present along with Ms. Bryan's supervisor. Ms. Bryan was asked if she was wearing a headband. Ms. Bryan indicated that she was, and showed those present the headband on her head. Ms. Bryan was then asked to put her hair in a ponytail. Ms. Bryan refused to do so and was sent home.

27. Plaintiff Bryan has been instructed that she is forbidden from returning to work unless she stops wearing her hair out; Defendants have constructively terminated Ms. Bryan with this ultimatum.

## FIRST CAUSE OF ACTION
### Violations of 42 U.S.C. § 1981 against all Defendants

28. Plaintiff reiterates and incorporates every allegation contained in this Complaint with the same force and effect as though they were separately alleged and reiterated herein.

29. "All persons within . . . the United States shall have the same right . . . to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings . . . as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties . . . and to no other." 42 U.S.C. § 1981(a).

30. To "'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

31. When Defendants forced Plaintiff to conduct herself in a manner that was not required for white citizens, they violated the above-referenced statute. Many of Ms. Bryan's co-workers wear their hair in a similar length and remain unmolested by Defendants.

32. Ms. Bryan was terminated by Defendants because she prefers to keep her hair in a "natural" African-American style. Defendants' actions are akin to requiring Ms. Bryan to lighten her skin in order to come to work.

33. As a result of Defendant's intentional and unlawful acts, Plaintiff suffered damages, including but not limited to past and future lost wages and benefits, past and future emotional distress, emotional injuries in an amount to be determined at trial, and the costs of bringing this action including but not limited to attorneys' fees.

**SECOND CAUSE OF ACTION**
**Violation of the New York City Human Rights Law § 8-107**

34. Plaintiff reiterates and incorporates every allegation contained in this Complaint with the same force and effect as though they were separately alleged and reiterated herein.

35. The NYCHRL forbids employers from, "because of . . . race . . . [or] color, . . . discharg[ing] from employment . . . or . . . discriminat[ing] against such person in compensation or in terms, conditions or privileges of employment." N.Y.C. ADMIN. CODE § 8-107.

36. Defendants discriminated against and discharged Plaintiff Bryan because of her race. Specifically, Ms. Bryan was discriminated against based on the appearance of her natural, African-American type hair.

37. Ms. Bryan, because of her race, was subjected to additional job requirements and restrictions compared with her coworkers.

38. Defendants ultimately terminated Ms. Bryan because of her race.

39. Defendants cannot demonstrate a legitimate, non-discriminatory reason for their actions.

40. Therefore, Ms. Bryan is entitled to compensatory and punitive damages, plus interest, attorneys' fees, and costs.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants as follows:

(i) For the First Claim, actual damages to be determined at trial, but in no event less than $450,000;

(ii) For the Second Claim, actual damages to be determined at trial, but in no event less than $450,000;

(iii) Punitive damages;

(iv) Liquidated damages;

(v) Lost wages;

(vi) Lost employment benefits;

(vii) Pre-judgment interest;

(viii) Post-judgment interest;

(ix) Attorneys' fees, disbursements, and other costs; and,

(x) Such other and further relief as the Court may deem just and proper.

Dated: New York, New York
June 12, 2014

Respectfully submitted by:
THE HARMAN FIRM, PC

  s/  Walker G. Harman, Jr.
Walker G. Harman, Jr. [WH-8044]
Ronnie L. Silverberg [RS-6881]
1776 Broadway, Suite 2030
New York, New York 10019
(212) 425-2600
wharman@theharmanfirm.com
rsilverberg@theharmanfirm.com